Thomas *v.* State.

5109                                          379 S. W. 2d 26

Opinion delivered May 25, 1964.

*W. B. Howard* and *Jack Segars,* for appellant.

*Bruce Bennett,* Attorney General, by *Richard B. Adkisson,* Asst. Atty. General, for appellee.

Frank Holt, Associate Justice. The appellant was charged by information with the crime of first degree murder. A jury found him guilty of the crime of involuntary manslaughter and assessed his punishment at three years in the penitentiary. On appeal from a judgment on this verdict appellant relies for reversal solely upon the point that "the court erred in denying appellant's motion to quash the special jury panel selected by the sheriff after the quashing of the regular panel." We must agree with the appellant.

Prior to trial the appellant, a Negro, filed a motion to quash the regular petit jury panel alleging that members of his race had been willfully excluded from this jury panel by the jury commissioners on account of their race and color and such a systematic exclusion had existed locally for more than twenty-five years. There-

fore, such discrimination denied to him equal protection of the law as guaranteed by the Fourteenth Amendment of the United States Constitution.

Upon proof being presented in behalf of appellant's motion, the court quashed and discharged the questioned jury panel. It appears that in the Jonesboro District of Craighead County Negroes comprised 4.2% of the population and 2.4% of the qualified electors of that District and that for more than twenty-five years no Negro had served on a criminal court jury panel except two Negroes during a term of court in 1953. Upon quashing this original jury panel the court appointed the sheriff of the county to summons a new or special panel of petit jurors to serve for the balance of the term. Ark. Stat. Ann. § 43-1912.1 (Supp. 1963). The court directed the sheriff to select whomsever he desired in keeping with the requisite qualifications for jury service and, further, that members of the quashed panel were not ineligible to serve on a new panel. There were thirty-two of the thirty-eight quashed panel members in attendance at court during this procedure. The sheriff immediately resummoned these thirty-two members of the quashed panel as members of the special panel without considering any other persons. He then proceeded to select six Negroes, admittedly because of their race, and placed their names at the top of the list of the special jurors again making a complete list of thirty-eight jurors.

The following day the appellant moved to quash this special jury panel, again alleging that the appellant's rights, both statutory and constitutional, were violated in the manner of its selection. The court overruled appellant's motion to quash the special panel.

In *Bone* v. *State*, 198 Ark. 519, 129 S. W. 2d 240, the trial court denied a motion by appellant, a Negro, to quash the venire of petit jurors based upon the systematic exclusion of Negroes on the jury panel. The trial court, however, on the day of the trial placed three Negroes on the regular jury panel in an effort to meet the

objections of the defendant. Upon appeal, in discussing this point, we said:

"* * * If the objection made was tenable, and, no doubt, it was, it must have operated not to remove from the jury panel three members in whose places there might have been substituted qualified jurors of the Negro race, but *this objection was to the entire panel,*

* * *. The removal of three from an improper venire upon which twenty-one improperly were left, certainly did not cure the error or *meet the requirements of the substantive law of the land.*" [Emphasis added]

In *Maxwell* v. *State,* 217 Ark. 691, 232 S. W. 2d 982, the original jury panel contained no Negroes. On a motion by appellant, a Negro, to quash the panel because of systematic exclusion of members of his race from the panel the court proceeded to discharge all but thirteen members of this panel. A special list was summoned. The new panel, totaling sixty-nine members, included eight Negroes and the thirteen retained from the original panel. The state contended that the commingling of the original thirteen jurors with the new panel containing the eight Negroes afforded the defendant due process of law, namely, the right to select a jury of twelve from a panel partially composed of members of his own race. In holding the action of the trial court was reversible error and required a new trial, we said:

"* * * The answer is that we are dealing primarily with the Constitution as distinguished from a particular defendant. * * * But there is no doubt that the local system of jury selection resulted in systematic exclusion of Negroes in violation of the Fourteenth Amendment, and that for the first time in many years colored electors were summoned when the special list was given the Sheriff."

In that case we held that the retention and commingling of thirteen of the original jurors on a new list totaling sixty-nine jurors denied the defendant his fundamental rights.

In the case at bar the appellee, however, contends that under the authority of Ark. Stat. Ann. § 43-1912.2 (Supp. 1963) the thirty-two members of the original panel quashed by the court could now be carried over and were eligible to serve on the new jury panel. This section reads:

"The quashing of a jury panel by order of the court shall not by reason thereof render the *individual members* of such panel ineligible to serve as jurors if *chosen subsequently according to law* at same at a succeeding term of court." [Emphasis added]

Under the facts in this case we c a n n o t  a g r e e with appellee. The sheriff testified with commendable candor that he did not consider the qualifications of any other persons when he resummoned the thirty-two jurors in question and, further, that he was putting his "stamp of approval" on the selection previously made by the jury commisisoners. The trial court in quashing the original panel in effect found that the panel had been selected under a pattern of systematic exclusion of Negroes that had existed for some twenty-five years. The above quoted statute does not authorize the blanketing en masse practically the entire membership of an admittedly defective panel into a new or special panel. It is well settled that members of a jury must be selected as individuals on the basis of individual qualifications and not included or excluded as members of a race. *Dorsey* v. *State,* 219 Ark. 101, 240 S. W. 2d 30, certiorari denied, 342 U. S. 851; *Cassell* v. *Texas,* 339 U. S. 282.

We deem it unnecessary to reach other arguments advanced by the appellant.

The judgment is reversed and the cause remanded.

McFADDIN, J., dissents.

ED. F. McFADDIN, Associate Justice (dissenting). It is my opinion that the judgment should be affirmed on the point discussed in the Majority Opinion; *i.e.,* the selection of the jury that tried the case.

The appellant had successfully quashed the original jury panel solely because there were no Negroes selected on said panel. The thirty-two white persons on the original jury panel were not individually disqualified: the only reason for quashing the panel was that there were no Negroes on the original panel.

The Sheriff then selected six Negroes for the new panel and placed them at the top of the list, and some of the Negroes served on the trial jury that convicted the appellant. The percentage of six Negroes to thirty-two white persons was a greater percentage of Negroes to whites than the percentage of Negro poll tax holders bore to the percentage of white poll tax holders in Craighead County; so surely the appellant received more than a fair percentage of Negroes on the panel and also more than a fair percentage of Negroes on the jury that actually tried and convicted him.

I think the Sheriff followed the exact requirements of Act No. 93 of 1961, as now found in Ark. Stat. Ann. § 42-1912.1-2 (Supp. 1963). Prior to the said 1961 Act the Jury Commissioners would have been reassembled to select a new panel of jurors (*Perry and Coggins* v. *State*, 232 Ark. 959, 342 S. W. 2d 95). That opinion was delivered on January 9, 1961, and the Legislature then passed Act No. 93 of 1961, approved February 16, 1961, to eliminate the delay that would be incidental to requiring the Jury Commissioners to be reassembled. The said 1961 Act changed the rule stated in such cases as *Maxwell* v. *State*, 217 Ark. 691, 232 S. W. 2d 982. Under the plain wording of the said 1961 Act, the Sheriff had the right to select the thirty-two white persons that he did, and no error was committed in that regard.