PERRY AND COGGINS *v.* STATE.

4980 and 4986                                    342 S. W. 2d 95

Opinion delivered January 9, 1961.

*Robinson, Sullivan & Rosteck,* for appellant.

*Bruce Bennett,* Atty. General, by *Bill J. Davis,* Asst. Atty. General, for appellee.

J. SEABORN HOLT, Associate Justice. The appellants, Jesse Raymond Perry and John Taylor Coggins, were charged with the crime of unlawfully and feloniously injuring property with dynamite in violation of Arkansas Statutes (1947) § 41-4237. Separate trials were held for each of the named defendants and a jury returned a verdict of guilty against each. Punishment for Perry was assessed at three years in the State Penitentiary. Punishment for Coggins was assessed at three years in the State Penitentiary and a $500.00 fine levied. A synopsis of the material facts shows that the appellants were part of the "confidential squad" of an organization known as the Ku Klux Klan who planned and carried out acts of violence directed against the Little Rock Public School Board and certain city officials of the City of Little Rock. The violence was designed to harass the School Board and city officials for their role in the integration of Negro pupils into the Little Rock school system. On the afternoon of September 6, 1959, Perry and Coggins, in the company of another person, drove to the places that had been selected as targets for bombing in order to acquaint themselves with the

nature and location of the targets. On the night of September 7, 1959, the appellants proceeded to carry out the plan of dynamiting the school board offices at Eighth and Louisiana Streets, Mayor Werner Knoop's office on Gaines Street, and the bombing of Little Rock Fire Chief Gann Nalley's station wagon. Perry and Coggins were arrested on September 10, 1959, and charged the following day with willfully and feloniously destroying property with dynamite.

Although the appellants assigned numerous alleged errors in the trial court proceedings, they argue but three on this appeal. (I) That the trial court erred in refusing to grant a change of venue, (II) that the trial court erred in refusing to quash the jury panel, and (III) that the trial court erred in permitting statements of other offenses with which the defendant, Jesse Raymond Perry, was charged to be admitted in evidence.

## I

It is first contended that the trial court erred in refusing to grant a change of venue to the defendants because widespread coverage of the crime by local newspapers and other news media created a situation where public sentiment was so aroused and inflamed that it would be impossible for the defendants to obtain a fair and impartial trial in Pulaski County. A petition for change of venue was filed under Arkansas Statutes (1947) § 43-1501 and supporting affidavits were signed by thirteen persons, nine of whom testified at the hearing. The State filed counter-affidavits from twenty-seven persons and twenty-one of these testified. Unless the trial court abused its discretion in denying appellant's motion for a change of venue, then we must affirm the court's order. See *Bailey* v. *State*, 204 Ark. 376, 163 S. W. 2d 141, *Meyer* v. *State*, 218 Ark. 440, 236 S. W. 2d 996. In the present case, our review of the facts does not show an abuse of discretion. Numerous witnesses testified for both the defendants and the State. Their testimony was contradictory. However, in *Leggett* v. *State*, 227 Ark.

393, 299 S. W. 2d 59, this court held no abuse of discretion existed where there was presented a situation where hundreds of veniremen were searchingly examined under oath over a three-day period. Here, as in the *Leggett* case, *supra,* there is evidence that many veniremen may have reached positive conclusions as to the guilt or innocence of the defendants, but the lower court reached the conclusion after hearing all the testimony firsthand that the defendants could receive a fair trial and we cannot say under the facts of this case there was an abuse of discretion. We said in the *Leggett* case:

"It cannot be said that the court abused its discretion in refusing to order a change of venue. What the statute requires is a showing that the minds of the inhabitants of the county are so prejudiced against the accused that a fair trial cannot be had. Arkansas Statutes (1947) § 43-1501. Formerly the court was restricted to determining the credibility of the affiants supporting the motion, but the 1936 revision of the statute permits the court to ascertain whether the allegations of prejudice are well founded. *Robertson* v. *State,* 212 Ark. 301, 206 S. W. 2d 748. Here the trial judge had listened for more than three days while hundreds of veniremen were searchingly examined under oath. In deciding whether the appellant's two witnesses had correctly estimated the local sentiment the court was entitled to consider the views of scores of citizens already heard. Although many veniremen had reached positive conclusions from what they had read or heard, there is no indication that the news reports were biased or represented a studied effort to inflame the public. *Meyer* v. *State,* 218 Ark. 440, 236 S. W. 2d 996. Despite the defendant's theory that it was impossible to obtain a fairminded jury within the county, the court was convinced by testimony heard at firsthand that this goal had almost been reached. In these circumstances the conclusion that the asserted prejudice did not exist lay well within the limits of the court's discretionary authority."

## II

It is next contended that the trial court erred in refusing to quash the jury panel. The court appointed three jury commissioners for the September 1959 term of court. The jury commissioners selected the jury panel for the September term of court and the respective jurors were summoned to appear on the first day of the new term, September 28, 1959. On this same date the court felt that one of the Commissioners, Marion Ward, was disqualified to serve as a jury commissioner and removed him. The jury was dismissed and each was paid for one day's jury service. A new jury commissioner, Jack Pickens, was selected by the court to replace Mr. Ward. The new commissioners selected a panel of jurors by which Perry and Coggins were ultimately tried and convicted. The appellants rely upon Arkansas Statutes (1947) § 39-222 which provides if the panel of jurors selected is set aside that the court shall order the sheriff to summon a petit jury who shall attend and perform the duties of jurymen as if they had been regularly selected. It is argued that in the present case, since the regular panel of jurors was set aside, that the sheriff should have summoned a panel of jurymen to try the defendants. We do not agree. Act 205 of Acts of 1951, compiled as Ark. Stats. 39-220.1 and 39-221.1, provides:

''Deficiencies in the regular panel of the petit jury shall be filled by selecting jurors from the special panel provided for in section 3 [§ 39-220] of this act and when in the trial of any case the regular panel is exhausted the court shall direct the summoning of a sufficient number of jurors from the special panel to complete a jury for the trial of said cause. In no event, except by consent of the parties, shall bystanders be summoned.

''In the event it becomes evident to the court that the special panel should be supplemented with additional names of petit jurors the court may recall the jury commissioners which selected such panel for the purpose of supplementing said special panel with such number of

petit jurors as the court deems necessary. In the event of disqualification or unavailability of one or more of such jury commissioners the court may appoint one or more jury commissioners in lieu thereof.''

In the present case both the regular and the special panels of petit jurors were quashed, therefore it was necessary for the court to recall the jury commissioners to supplement the panels selected. It will be noted that this section of the statute, § 39-221.1, provides that the court may appoint other jury commissioners if one or more of the jury commissioners is disqualified. This was done in the present case. We think that the court followed the proper procedure in the present case and no error was committed as urged by the appellants.

The appellants also argue that the jury panel should have been quashed because two of the jury commissioners, Jack Pickens and Milton Anderson, were members of business firms which had subscribed to a reward fund sponsored by the Little Rock Chamber of Commerce to be paid for information leading to the arrest and conviction of individuals responsible for the aforementioned crimes. We think this is without merit.

In *Arnold* v. *State,* 148 Tex. Cr. R. 310, 186 S. W. 2d 995, 158 A.L.R. 1356, the defendants were indicted by a grand jury for cattle thefts and convicted by a petit jury. Both the grand jury and the petit jury contained persons who were members of an association whose purpose was to help investigate and prosecute cattle thefts. The Court of Criminal Appeals of Texas held that such members were not disqualified. And in *Corley* v. *State,* 162 Ark. 178, 257 S. W. 750, the citizens of Newport had contributed money to promote a law and order league, and several of the veniremen had contributed money to this association. These veniremen testified that their contributions had been made for the purpose of suppressing lawlessness generally, and no juror held competent was shown to have made a contribution for the purpose of prosecuting the appellant personally. The court in commenting upon this noted:

"The veniremen were not disqualified by this bias. The rule is that a juror is not disqualified from trying a person accused of a particular crime because he has a prejudice against the crime charged, if such prejudice against a particular crime would not prevent the juror from impartially considering the question of the guilt of the accused."

While the above cases deal with either grand or petit jurymen we can see no reason to apply a different rule of disqualification for jury commissioners who are even further removed from the case than a petit juror. The bias, if any, of jury commissioners, Pickens and Anderson, was not toward the particular defendants in this case, but toward the crime committed. It was their desire to see the offenders punished, whoever they might be. It is certainly no disqualification that a jury commissioner or juror be prejudiced against lawlessness. ". . . (G)ood citizenship implies a respect for and obedience to all laws, so long as they are laws, and a willingness and desire to see them effectively administered." *Remer* v. *State,* 3 Okla. Crim. 706, 109 P. 247.

## III

Finally the appellant, Perry, contends that the court erred in allowing the prosecution to offer proof of an offense in addition to the one for which he was being tried. The record shows that Perry and the other members of the confidential squad met on several occasions to plan the dynamiting of three different places. All three bombings were part of a single scheme and were carried out in rapid succession on the same night. In the case at bar Perry was being tried on the charge of dynamiting the School Board office. The court allowed the prosecution to introduce proof of the entire plan and its execution, and this evidence showed that Perry was also implicated in the bombing of Nalley's car. The jury was instructed that the proof concerning the other offense was not to be considered with reference to the defendant's guilt of the charge on trial.

The court's ruling was correct. "If several crimes are intermixed, or blended with one another, or connected so that they form an indivisible criminal transaction, and full proof by testimony, whether direct or circumstantial, of any one of them cannot be given without showing the others, evidence of any or all of them is admissible against a defendant on trial for any offense which is itself a detail of the whole criminal scheme." Underhill's Criminal Evidence (5th Ed.), § 207.

The principle has often been recognized by this court. In the early case of *Baker* v. *State*, 4 Ark. 56, we stated the rule as follows: "Generally speaking, it is not competent for a prosecutor to prove a man guilty of one felony, by proving him guilty of another; but where several felonies are connected together, and form part of one entire transaction, then the one is evidence to prove the character of the other. . . . All the authorities concur, that the intention and design of the party are best explained by a complete view of every part of his conduct at the time, and not merely from the proof of a single and isolated act or declaration; and it may so happen, that, from the nature of the offense charged, it is impossible to confine the evidence to proof of a single transaction." Again, in *Banks* v. *State*, 187 Ark. 962, 63 S. W. 2d 518, we said: "Moreover, the testimony of Mrs. May was competent for another reason, that is to say, if several crimes are intermixed, or blended with one another, or connected so that they form an indivisible criminal transaction, and full proof by testimony, whether direct or circumstantial, of any one of them cannot be given without showing the others, evidence of any or all of them is admissible against a defendant on trial for any offense, which is itself a detail of the whole criminal scheme. Thus, where two or more persons are assaulted at or about the same time and place, it will be permitted to prove all the assaults on the trial of one indictment for any one of them. For the reason that all the assaults are merely parts of one transaction and to prove one

necessitates proof of all of them.'' Other cases to the same effect include *Johnson* v. *State,* 152 Ark. 218, 238 S. W. 23, and *Mayfield* v. *State,* 160 Ark. 474, 254 S. W. 841.

We have examined the other numerous assignments of error but find no error as alleged.

The judgment is affirmed in both cases.

ROBINSON, J., not participating.

JOHNSON, J., concurring.

JIM JOHNSON, Associate Justice, concurring.

I concur in the result reached by the majority but for entirely different reasons than those advanced in the majority opinion as to the appellants' contentions on (1) Petition for Change of Venue, and (2) The alleged reception of statements as to other offenses charged against the appellant Perry. I am in full accord with the majority as to its reasoning on appellants' contentions as to the refusal of the trial court to quash the jury panel.

My basic difference with the majority is that I feel that the case should be affirmed, not because no error was committed on denial of the Petition for Change of Venue, but because the error was harmless in the cases of these two appellants. The same thing may be said with reference to the statements made by the Prosecuting Attorney and one witness with reference to the fact that there were other charges pending against the appellant Perry. On this latter point, I cannot agree with the approach of the majority because, as I view it, the point raised by appellant is not that any improper evidence was received but rather that even though the trial court cautioned the jury to disregard such statements, it was impossible to erase the prejudice which their utterance in the presence of the jury had created.

As to appellants' Petition for Change of Venue, I firmly believe that the trial court erred in denying the petition. The majority cites *Leggett* v. *State,* 227 Ark. 393, 299 S. W. 2d 59, to sustain the trial court's action. It

should be remembered that in the Leggett case the trial court had heard the testimony of "hundreds of veniremen" and jurors had actually been selected at the time of the presentation of the petition. Further, the court found that in the Leggett case there was no indication: "... *that the news reports were biased or represented a studied effort to inflame the public. . .*" [emphasis added]. In the case now before us, no jurors had been examined before the Court passed upon the Petition for Change of Venue. Without detailing the testimony of the witnesses called by the State or the appellants on this petition, I am of the opinion that when all of such testimony is considered, the overwhelming preponderance of the evidence showed that a fair and impartial jury could not be selected in Pulaski County to try these cases. The second point of distinction between the cases now before us and the Leggett case is that in the present cases the record clearly shows that the news articles, editorials and cartoons were "biased" and did represent "a studied effort to inflame the public."

Space will not permit a detailed recitation of the text, prominence, size of headlines, number of stories and slanted emphasis of the news articles. It is sufficient to say that no fair minded person could read the same without coming to the conclusion that the news editors were magnifying the crimes and deliberately attempting to create hostility toward the defendants. Surely, no reasonable person would say that the editorials appearing in the Arkansas Gazette, wherein it was stated that the editors trusted that the Federal Bureau of Investigation had investigated whether or not the defendants were communists, were not a "studied effort to inflame the public." This example could be multiplied but this is a fair sample of the editorial treatment of the defendants. It is possible that fair minded men might differ as to the deliberate intent of the editors in news treatment of the matter if this were all that appeared in the record, but, when the editorials are considered it is clear, beyond the shadow of a doubt, that these editors not only attempted to prejudice the public against the defendants before trial but also that these efforts were undoubtedly successful. It is shameful

that any responsible newspaper editor would attempt to pervert justice by preventing a defendant from being tried by fair and impartial jurors. It matters not how guilty the defendants may have been and undoubtedly were; this did not give license to deprive them of their constitutional right to trial by an unbiased jury. If we ever come to the point that we reason that "the end justifies the means" we will have destroyed our government of law and will have substituted a "government by men" which will surely lead to the doom and destruction of our great nation.

Having stated my reasons for disagreeing with the treatment of the issue by the majority, I advert to my reason for concurring in the result, i.e., that the error was harmless. In *Sullins v. State,* 79 Ark. 127, 95 S. W. 159, in discussing an error of the trial court in refusing to sustain a challenge for cause against one of the trial jurors, we said:

"For instance, if the undisputed evidence, not only on the part of the state, but also *the testimony of the defendant himself,* clearly shows the facts which make out the crime, then we think this Court would not be justified in sitting the conviction aside for such an error, for under such a state of facts *the verdict would have been the same had the case been tried by any other unbiased and impartial jury.* Now that is the case here, so far as the guilt of the defendant is concerned; for his own testimony shows that the killing of Radcliff was neither necessary nor excusable on his part." [Emphasis added.]

In *Anderson v. State,* 197 Ark. 600, 124 S. W. 2d 216, we upheld a first degree murder conviction where confessions of conspirators had been improperly admitted against him saying:

"*They could not have been prejudicial in this case because the appellant, Joe Anderson, testified and admitted the conspiracy, the robbery and the killing of Cooley.* It is true he said that Cooley was shot when he was a few feet away and that he had nothing to do with the shooting, but it was done in furtherance of the conspiracy and all the

conspirators were guilty the same as the one that actually did the shooting.'' [Emphasis added.]

In *Malone* v. *State,* 202 Ark. 796, 152 S. W. 2d 1019, in discussing an alleged improper argument of the prosecuting attorney, we said:

''Moreover, no prejudice could have resulted by that statement of the prosecuting attorney, and *even where error is shown, if it is manifest from the record that no prejudice resulted, this Court will not reverse.''* [Emphasis added.]

Turning now to the record in the cases here, I find that the appellant Coggins testified in open court and admitted his guilt, seeking only to minimize his turpitude by statements that he thought the bomb would only cause slight damage and did not realize the havoc which it would wreak.

The appellant Perry testified in Chambers that the second of two confessions he made to the Prosecuting Attorney was true and he did not make the confession because of coercion, threats, duress or promises of reward. This confession was read in evidence against him and constitutes an unqualified admission of guilt as an accessory before the fact. This justified and demanded his conviction as a principal and based on the record before us, no fair minded jury could have come to any other conclusion, the distinction between accessory before the fact and principal having been abolished. Ark. Stats., § 41-118.

By virtue of both appellants own testimony, they would have been convicted by any fair minded jury and the convictions should stand because the error in denying the Petition for Change of Venue was harmless.

The contention of appellant Perry as to error in refusing to grant a mistrial because of statements of the prosecutor and a witness to the effect that other charges were pending against him is without merit because the error, if any, was harmless in view of his testimony — which, in effect, confessed guilt.

On this last point, the opinion of the majority goes to a point which I don't understand from the briefs to be raised by appellant and which, as I see it, could not properly be raised since the record shows that the Court did not admit evidence of similar offenses on the part of the defendant but instead charged the jury to disregard the improper statements. The appellant only contends that the admonitions of the Court were insufficient to remove the alleged prejudice created by these utterances. This contention is untenable for two reasons: (1) The appellant's admittedly true confession related his participation in and guilt of another crime, as well as guilt of the crime for which he was being tried. In this state of the record, it cannot be said that any prejudice resulted to the appellant because of the excluded statements of the Prosecuting Attorney and a witness. No objection was made to the reading of appellant's confession on the ground that it showed his guilt in another crime, and, indeed, none could have been properly made. (2) The admonition was ample to remove any possible prejudice. *Smith* v. *State,* 222 Ark. 650, 262 S. W. 2d 272.